UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STEVEN W. HABERMAN § § Plaintiff § vs. § PNC MORTGAGE COMPANY FKA § NATIONAL CITY MORTGAGE CO. § A DIVISION OF PNC BANK FKA § NATIONAL CITY BANK § | Civil Action No. 4:11CV-00126 MHS-ALM |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Steven W. Haberman ("Mr. Haberman" or "Plaintiff"), by counsel, and for his Complaint against the defendant, herein called ("the defendant" or "PNC") and states as follows:

### INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiff against the defendant for the willful, knowing, and/or negligent violation of Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the *"Fair Credit Reporting Act"*, hereafter the *"FCRA"*) which relates to the dissemination of consumer credit and other financial information and for violation of the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et. seq.*

### PARTIES

2. Plaintiff is a natural person residing in Collin County, Texas and he is a "consumer" as defined by Tex. Finance Code § 392.001(1) and the FCRA.

Plaintiff's Second Amended Complaint - Page 1

3. PNC is a national bank, having already been served and answered herein, that is engaged in the business of consumer finance.

4. Defendant is a "*person*" and a "*user*" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5. Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6. Defendant is a furnisher of consumer credit information to Trans Union, LLC, one of the three (3) national consumer reporting agencies.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Venue in this District is proper because the defendant transacts business in this District, Plaintiff was a resident of this District and the conduct complained of occurred in this District.

## FACTUAL ALLEGATIONS

8. Plaintiff filed bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, Case No. 08-42220 on August 21, 2008.

9. Any additional collection effort by any of Mr. Haberman's creditors on or after August 21, 2008, was prohibited by operation of the automatic stay.

10. National City Mortgage Co. asserted a pre-petition claim against Mr. Haberman in an attempt to collect a consumer debt allegedly owed by Plaintiff. The debt required Mr. Haberman to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily

for personal, family, or household purposes. The claim was listed on Schedule "D" as a secured claim.

11. The property was subsequently surrendered and foreclosed on August 4, 2009, and purchased by PNC.

12. On December 19, 2008, the Bankruptcy Court issued an order granting Mr. Haberman a discharge.

13. The Discharge Order discharged Mr. Haberman from any liability for the Defendant's pre-petition claim.

14. The Discharge Order operated as an injunction against the Defendant from taking any action to collect, recover, offset property of the Plaintiff, commence or continue any action to collect the debt.

15. The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed with the Bankruptcy Court, including Defendant. Notice to Defendant was not returned.

16. Defendant received the notice of discharge, a copy of which is attached hereto as "Exhibit A" and is incorporated herein by reference.

17. At no time has Defendant objected to or disputed the details of the claim in the August 21, 2008 schedules.

18. At no time during the Chapter 7 case did Mr. Haberman reaffirm the underlying debt with Defendant.

19. At no time during the Chapter 7 case was Defendant's pre-petition claim declared to be non-dischargeable.

20. Following the December 19, 2008 discharge, Defendant requested and received copies of Plaintiff's consumer report maintained by Trans Union, LLC ("Trans Union") on at least three (3) occasions. A redacted copy of Plaintiff's June 23, 2010, Trans Union consumer report showing these pulls is attached hereto as Exhibit "B" and is incorporated herein by reference. *See* Exhibit B at 9 of 13.

21. Defendant's multiple accesses of Plaintiff's consumer report occurred fifteen (15) to eighteen (18) months *after* Plaintiff's discharge.

22. The alleged purpose for obtaining Plaintiff's consumer report was for "account review" or "other business transaction." However, Plaintiff has had no account nor has he initiated any business transaction with Defendant at any time since his bankruptcy filing.

23. Plaintiff's June 23, 2010, Trans Union consumer report shows that the underlying National City account was "closed" with a remark of "Chapter 7 Bankruptcy" as of August 2008. *See* Exhibit B at 2 of 13.

24. Plaintiff, by and through counsel, contacted Defendant, by and through counsel, and advised of Defendant's illegal access to Plaintiff's credit report, and attempted to resolve the matter without litigation. *See* Email communication from Jim Manchee to Brian Engle dated June 26, 2010 (a copy of which is attached hereto as Exhibit "C").

25. The instant lawsuit was filed on February 8, 2011.

26. Following communication by Plaintiff, by and through counsel, Defendant requested and received copies of Plaintiff's Trans Union consumer report on at least

four (4) additional occasions. A redacted copy of Plaintiff's May 10, 2011, Trans Union consumer report showing these pulls is attached hereto as Exhibit "D" and is incorporated herein by reference. See Exhibit D at 7-9 of 12.

27. Defendant's multiple accesses of Plaintiff's consumer report occurred two (2) years *after* Plaintiff's discharge, and on the heels of specific notification by Plaintiff, by and through counsel, that such accesses were illegal.

28. Again, the alleged purpose for obtaining Plaintiff's consumer report was for "account review" or "other business transaction." However, Plaintiff still has had no account nor has he initiated any business transaction with Defendant at any time since his bankruptcy filing.

29. Plaintiff's May 10, 2011, Trans Union consumer report continues to show that the underlying National City account was "closed" with a remark of "Chapter 7 Bankruptcy" as of August 2008, with no further update. See Exhibit D at 2-3 of 12.

30. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant has received dozens, if not hundreds, of disputes from consumers, like Plaintiff, complaining that Defendant illegally accessed their credit reports.

31. After a reasonable time to conduct discovery, Plaintiff believes he can prove that despite such disputes, Defendant intentionally, knowingly and recklessly has not corrected its policy of doing so.

32. After a reasonable time to conduct discovery, Plaintiff believes he can prove that all actions taken by employees, agents, servants, or representatives of any

type for defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

33. After a reasonable time to conduct discovery, Plaintiff believes he can prove that all actions taken by defendant were done with malice, were done wantonly, recklessly, intentionally or willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

34. After a reasonable time to conduct discovery, Plaintiff believes he can prove that defendant knew and continues to know that a discharge order means the debt is no longer collectible, but the defendant has made a business decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate the plaintiff's right to privacy.

35. After a reasonable time to conduct discovery, Plaintiff believes he can prove that defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports.

## **DAMAGES**

36. The conduct of Defendant has been the producing, proximate, and resulting cause of past and future extreme mental distress and emotional anguish from the ongoing invasion of Plaintiff's privacy and other damages that will be presented to the jury.

37. Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorneys' fees incurred in pre-suit representation and in prosecuting this claim.

38. Due to defendant's conduct, Plaintiff is entitled to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

### GROUNDS FOR RELIEF  COUNT I

### FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681 *et. seq.*

39. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

40. The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> **(f) Certain use or obtaining of information prohibited.** – A person shall not use or obtain a consumer report for any purpose unless –
>
> **(1)** the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> **(2)** the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

See 15 U.S.C. § 1681*b* (f).

41. Section 1681*b*(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

> (a) **In General.** – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> * * *
>
> (3) To a person which it has reason to believe –
>
> > (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;
>
> * * *
>
> > (F) otherwise has a legitimate business need for the information * * *
> >
> > > (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

See 15 U.S.C. § 1681*b* (a)(3).

42. On at least seven (7) occasions since April 2010, Defendant requested and obtained Mr. Haberman's consumer report from Trans Union.

43. On each such occasion, Defendant represented to Trans Union that such requests were made for "account review" purposes.

44. When requesting and obtaining Mr. Haberman's credit information from Trans Union as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

45. Defendant has actual knowledge that as of Mr. Haberman's bankruptcy filing in August 2008, the underlying credit account was closed and Defendant was legally prohibited from pursuing any collection against or even communication with Mr. Haberman about that account to justify an account review of his credit information. As

Plaintiff's Second Amended Complaint - Page 8

such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

46. Defendant has actual knowledge that Mr. Haberman did not request credit from or otherwise initiate a credit transaction with Defendant at any time since his bankruptcy filing. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

47. Defendant had actual knowledge as of June 23, 2010, that Mr. Haberman did not authorize pulls of his consumer report by Defendant subsequent to his bankruptcy discharge and, in fact, that Mr. Haberman retained counsel to pursue these illegal invasions of his privacy. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

48. For Defendant to repeatedly request and obtain Mr. Haberman's private personal and financial information in the face of actual knowledge that it had no permissible purpose to do so constitutes knowing and willful violations of the FCRA.

49. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant has requested and obtained Mr. Haberman's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

50. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant used false pretenses, namely the representation that it intended to use Mr. Haberman's consumer report for account review purposes, to obtain Mr.

Haberman's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

51. After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, that Defendant is unwilling or unable to prevent its system from requesting and obtaining Mr. Haberman's consumer report without a permissible purpose, thereby subjecting Mr. Haberman to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

52. As a direct and proximate result of Defendant's conduct as outlined above, Mr. Haberman has suffered and will continue to suffer substantial injury including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

53. Defendant's conduct reveals a conscious and reckless disregard of Mr. Haberman's rights. The injuries suffered by Mr. Haberman are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE

54. Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

55. Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a) Tex. Fin. Code § 392.301(a)(8) which prohibits the defendant from taking an action prohibited by law. Since the Fair Debt Collection Act prohibits the pulling of a credit report without a valid purpose, defendant's action was also a violation of the Texas Finance Code.

b) Tex. Fin. Code § 392.304(a)(8) which prohibits the defendant misrepresenting the character, extent, or amount of the plaintiff's debt, or misrepresenting the status of the plaintiff's debt in a judicial or governmental proceeding. Since the defendant alleged the justification for pulling the reports was "account review" or "other business transaction" that was a misrepresentation of the status of debt.

c) Tex. Fin. Code § 392.304(a)(19) which prohibits the defendant's use of false representations or deceptive means to collect a debt. Since the debt had been discharged and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt in violation of the discharge injunction.

d) Under Tex. Fin. Code Ann. § 392.403, the said violations renders the Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

56. The above Texas Finance Code provisions are not preempted by the Fair Credit Reporting Act. *See Maloney v. LVNV LLC*, Slip Copy, 2006 WL 3006484, N.D. Tex., October 20, 2006 (NO.CIV.A.3:06-CV-0452).

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Mr. Haberman, prays that the Court will:

A. Enter judgment in favor of Mr. Haberman and against PNC for statutory damages, actual damages, costs, and reasonable attorneys' fees as provided by Tex. Fin. Code Ann. § 392.403;

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award punitive damage not less than three times the actual damages, including attorneys' fees, costs and expenses awarded in this case;

D. Declare that Defendant's actions violated the Texas Finance Code;

E. Enjoin the defendant from pulling Plaintiff's consumer reports in the future in violation of the Texas Finance Code and FCRA;

F. Award Plaintiff his damages under the FCRA.

G. Award Plaintiff pre-judgment interest as allowed by law.

H. Grant such other and further relief, in equity or in law, to which Mr. Haberman might show himself justly entitled.

Case 4:11-cv-00126-AM Document 9 Filed 05/17/11 Page 13 of 13 PageID #: 133

Respectfully submitted,

_____
William L. Manchee
SBOT 12891200
James J. Manchee
SBOT 00796988
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

Sylvia A. Goldsmith,
Ohio Bar # 0064871
(Admitted EDTX March 2008)
Law Office of Sylvia A. Goldsmith
Gemini Towers
1991 Crocker Road, Suite 600
Westlake, Ohio, 44145
(440) 934-3025 (telephone)
(440) 934-3026 (fax)

Co-Counsel for Plaintiff, Steven W. Haberman

## CERTIFICATE OF SERVICE

I certify that on May 17, 2011, a true and correct copy of Plaintiff's Second Amended Complaint was served by certified mail, return receipt requested on Latosha Lewis Payne, 700 Louisiana, Suite 4100, Suite 4100, Houston, Texas 77002.

_____
William L. Manchee