UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STEVEN W. HABERMAN | ' |
| | ' |
|    Plaintiff | ' |
| vs. | ' Civil Action No. 4:11CV-00126 MHS-ALM |
| | ' |
| PNC MORTGAGE COMPANY FKA | ' |
| NATIONAL CITY MORTGAGE CO. | ' |
| A DIVISION OF PNC BANK FKA | ' |
| NATIONAL CITY BANK | ' |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Steven W. Haberman ("Mr. Haberman" or "Plaintiff"), by counsel, and for his Complaint against the defendant, herein called ("the defendant" or "PNC") and states as follows:

### INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiff against the defendant for the willful, knowing, and/or negligent violation of Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the "*Fair Credit Reporting Act,*" hereafter the "*FCRA*") which relates to the dissemination of consumer credit and other financial information and for violation of the Texas Debt Collection Act, Tex. Fin. Code § 392.001 *et. seq.*

## PARTIES

2. Plaintiff is a natural person residing in Collin County, Texas and he is a "consumer" as defined by Tex. Finance Code § 392.001(1) and the FCRA.

3. PNC is a national bank, having already been served and answered herein, that is engaged in the business of consumer finance.

4. Defendant is a "***person***" and a "***user"*** of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5. Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6. Defendant is a furnisher of consumer credit information to Trans Union, LLC, one of the three (3) national consumer reporting agencies.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Venue in this District is proper because the defendant transacts business in this District, Plaintiff was a resident of this District and the conduct complained of occurred in this District.

## FACTUAL ALLEGATIONS

8. Plaintiff filed bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, Case No. 08-42220 on August 21, 2008.

9. Any additional collection effort by any of Mr. Haberman's creditors on or after August 21, 2008, was prohibited by operation of the automatic stay.

10. National City Mortgage Co. asserted a pre-petition claim against Mr. Haberman in an attempt to collect a consumer debt allegedly owed by Plaintiff. The debt required Mr.

Haberman to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes. The claim was listed on Schedule "D" as a secured claim.

11. On December 19, 2008, the Bankruptcy Court issued an order granting Mr. Haberman a discharge.

12. The Discharge Order discharged Mr. Haberman from any liability for the Defendant's pre-petition claim.

13. The Discharge Order terminated any rights Defendant had against Mr. Haberman with respect to the underlying account.

14. The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed with the Bankruptcy Court, including Defendant. Notice to Defendant was not returned.

15. Defendant received the notice of discharge, a copy of which is attached hereto as Exhibit "A" and is incorporated herein by reference.

16. At no time has Defendant objected to or disputed the details of the claim in the August 21, 2008 schedules.

17. At no time during the Chapter 7 case did Mr. Haberman reaffirm the underlying debt with Defendant.

18. At no time during the Chapter 7 case was Defendant's pre-petition claim declared to be non-dischargeable.

19. While Mr. Haberman never actually occupied the property previously securing his now-discharged mortgage with PNC, the property was formally "surrendered" and foreclosed

upon on August 4, 2009, and purchased by PNC. PNC knew as of that date that Mr. Haberman did not occupy the subject property.

20.   Subsequent to the December 19, 2008 discharge, Defendant requested and received copies of Plaintiff's consumer report maintained by Trans Union, LLC ("Trans Union") on at least three (3) occasions. A redacted copy of Plaintiff's June 23, 2010, Trans Union consumer report showing these pulls is attached hereto as Exhibit "B" and is incorporated herein by reference. *See* Exhibit B at 9 of 13.

21.   Defendant's multiple accesses of Plaintiff's consumer report occurred fifteen (15) to eighteen (18) months *after* Plaintiff's discharge.

22.   The alleged purpose for obtaining Plaintiff's consumer report was for "account review" or "other business transaction." However, Plaintiff has had no account nor has he initiated any business transaction with Defendant at any time since his bankruptcy filing.

23.   Plaintiff's June 23, 2010, Trans Union consumer report shows that the underlying National City account was "closed" with no balance owing, and a remark of "Chapter 7 Bankruptcy" as of August 2008. *See* Exhibit B at 2 of 13.

24.   Plaintiff, by and through counsel, contacted Defendant, by and through counsel, and advised of Defendant's illegal access to Plaintiff's credit report, and attempted to resolve the matter without litigation. *See* Email communication from Jim Manchee to Brian Engle dated June 26, 2010 (a copy of which is attached hereto as Exhibit "C").

25.   The instant lawsuit was filed on February 8, 2011.

26.   Following communication by Plaintiff, by and through counsel, Defendant requested and received copies of Plaintiff's Trans Union consumer report on at least four (4)

Plaintiff's Third Amended Complaint - Page 4

additional occasions. A redacted copy of Plaintiff's May 10, 2011, Trans Union consumer report showing these pulls is attached hereto as Exhibit "D" and is incorporated herein by reference. *See* Exhibit D at 7-9 of 12.

27. Defendant's multiple accesses of Plaintiff's consumer report occurred two (2) years *after* Plaintiff's discharge, and on the heels of specific notification by Plaintiff, by and through counsel, that such accesses were illegal.

28. Again, the alleged purpose for obtaining Plaintiff's consumer report was for "account review" or "other business transaction." However, Plaintiff still has had no account nor has he initiated any business transaction with Defendant at any time since his bankruptcy filing.

29. Plaintiff's May 10, 2011, Trans Union consumer report continues to show that the underlying National City account was "closed" with no balance owing, and a remark of "Chapter 7 Bankruptcy" as of August 2008, with no further update. *See* Exhibit D at 2-3 of 12.

30. On or around June 6, 2011, National City Bank sued Mr. Haberman to evict him from the property that previously secured the mortgage discharged in Mr. Haberman's bankruptcy. *See* Original Petition for Forcible Detainer (a copy of which is attached hereto as Exhibit "E" and is incorporated herein by reference).

31. Defendant knew or had reason to know that Mr. Haberman never actually occupied the subject property and, in fact, that the subject property had formally been "surrendered" and foreclosed upon in August 2009, almost *two (2) years* prior to the eviction action.

32. Despite the fact that Defendant knows Mr. Haberman is represented by counsel in the instant lawsuit which was commenced several months before the forcible detainer action,

Defendant did not serve or otherwise inform Mr. Haberman or his counsel of Defendant's intent to file such action.

33. Mr. Haberman only learned of the forcible detainer action through a public records search on himself in or around August 2011.

34. Mr. Haberman was distraught to discover that the public record now reflects a successful forcible detainer action – negatively implicating Mr. Haberman's credit and renting status subsequent to his fresh start in bankruptcy – even though he never even occupied the subject property and had properly "surrendered" the property as part of his bankruptcy back in August 2008.

35. Despite filing of the instant lawsuit which specifically claims Defendant has no legal purpose to access Mr. Haberman's credit report, Defendant requested and received a copy of Plaintiff's Trans Union consumer report on at least one (1) additional occasion in July 2011. A redacted copy of Plaintiff's September 6, 2011, Trans Union consumer report showing this pull is attached hereto as Exhibit "F" and is incorporated herein by reference. *See* Exhibit F at TU000043.

36. Defendant's access of Plaintiff's consumer report occurred two (2) years *after* Plaintiff's discharge, more than a year after specific notification by Plaintiff, by and through counsel, that such access was illegal, and five (5) months after litigation had commenced on this very issue.

37. Again, the alleged purpose for obtaining Plaintiff's consumer report was for "account review" or "other business transaction." However, Plaintiff still has had no account nor has he initiated any business transaction with Defendant at any time since his bankruptcy filing.

Plaintiff's Third Amended Complaint - Page 6

38. Plaintiff's September 6, 2011, Trans Union consumer report continues to show that the underlying National City account was "closed" with no balance owing, and a remark of "Chapter 7 Bankruptcy" as of August 2008, with no further update. *See* Exhibit F at TU000038-39.

39. Plaintiff justifiably fears and believes that Defendant will continue to access his private personal and financial information absent this Court's intervention.

40. Plaintiff justifiably fears and believes that Defendant will continue to pursue Plaintiff in legal (and perhaps non-legal) ways in connection with the discharged debt absent this Court's intervention.

41. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant has received dozens, if not hundreds, of disputes from consumers, like Plaintiff, complaining that Defendant illegally accessed their credit reports.

42. After a reasonable time to conduct discovery, Plaintiff believes he can prove that despite such disputes, Defendant intentionally, knowingly and recklessly has not corrected its policy of doing so.

43. After a reasonable time to conduct discovery, Plaintiff believes he can prove that all actions taken by employees, agents, servants, or representatives of any type for defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

44. After a reasonable time to conduct discovery, Plaintiff believes he can prove that all actions taken by defendant were done with malice, were done wantonly, recklessly, intentionally or willfully, and were done with either the desire to harm Plaintiff and/or with the

knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

45. After a reasonable time to conduct discovery, Plaintiff believes he can prove that defendant knew and continues to know that a discharge order means the debt is no longer collectible, but the defendant has made a business decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate the plaintiff's right to privacy.

46. After a reasonable time to conduct discovery, Plaintiff believes he can prove that defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports.

## DAMAGES

47. The conduct of Defendant has been the producing and proximate cause of past and future mental distress and emotional anguish from the ongoing invasion of Plaintiff's privacy and other damages that will be presented to the jury.

48. Due to Defendant's conduct, Plaintiff has a successful forcible detainer action against him in the public record, negatively implicating his credit and renting status, that will require time, effort and legal fees to eliminate, if that is even possible.

49. Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorneys' fees incurred in pre-suit representation and in prosecuting this claim.

50. Due to defendant's conduct, Plaintiff is entitled to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## GROUNDS FOR RELIEF  COUNT I

## FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681 *et. seq.*

51.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

52.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> **(f)  Certain use or obtaining of information prohibited.** – A person shall not use or obtain a consumer report for any purpose unless –
>
>    **(1)** the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
>    **(2)** the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681*b* (f).

53.     Section 1681*b*(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

> **(a) In General.** – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> *     *     *
>
>    **(3)** To a person which it has reason to believe –
>
>       **(A)**  intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;
>
> *     *     *
>
>       **(F)** otherwise has a legitimate business need for the information * * *

> > (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681*b* (a)(3).

54. On at least eight (8) occasions since April 2010, Defendant requested and obtained Mr. Haberman's consumer report from Trans Union.

55. On each such occasion, Defendant represented to Trans Union that such requests were made for "account review" purposes.

56. When requesting and obtaining Mr. Haberman's credit information from Trans Union as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

57. Defendant has actual knowledge that as of Mr. Haberman's bankruptcy filing in August 2008, the underlying credit account was closed and Defendant was legally prohibited from pursuing any collection against or even communicating with Mr. Haberman about that account to justify an account review of his credit information. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

58. Defendant has actual knowledge that Mr. Haberman did not request credit from or otherwise initiate a credit transaction with Defendant at any time since his bankruptcy filing. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

59. Defendant had actual knowledge as of June 23, 2010, that Mr. Haberman did not authorize pulls of his consumer report by Defendant subsequent to his bankruptcy discharge and,

in fact, that Mr. Haberman retained counsel to pursue these illegal invasions of his privacy. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

60. Defendant had actual knowledge as of the filing of the instant litigation in February 2011, that Mr. Haberman did not authorize pulls of his consumer report by Defendant subsequent to his bankruptcy discharge and, in fact, that Mr. Haberman retained counsel to pursue these illegal invasions of his privacy. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Mr. Haberman's credit information.

61. For Defendant to repeatedly request and obtain Mr. Haberman's private personal and financial information in the face of actual knowledge that it had no permissible purpose to do so constitutes knowing and willful violations of the FCRA.

62. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant has requested and obtained Mr. Haberman's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

63. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant used false pretenses, namely the representation that it intended to use Mr. Haberman's consumer report for account review purposes, to obtain Mr. Haberman's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

64. After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, that Defendant is unwilling or unable to prevent its system from requesting and obtaining Mr. Haberman's consumer report without a permissible purpose,

thereby subjecting Mr. Haberman to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

65. Mr. Haberman is dumbfounded and disgusted that despite his best efforts, by and through counsel, to stop Defendant from further invading his privacy, Defendant continue to blatantly disregard Mr. Haberman's rights.

66. As a direct and proximate result of Defendant's conduct as outlined above, Mr. Haberman has suffered and will continue to suffer substantial injury including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

67. Defendant's conduct reveals a conscious and reckless disregard of Mr. Haberman's rights. The injuries suffered by Mr. Haberman are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681*n*(a)(2).

## GROUNDS FOR RELIEF - COUNT II
## TEXAS FINANCE CODE

68. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

69. Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

    a) Tex. Fin. Code § 392.301(a)(8) which prohibits the defendant from taking an action prohibited by law. Since the Fair Credit Reporting Act prohibits the

pulling of a credit report without a valid purpose, defendant's action was also a violation of the Texas Finance Code.

b)   Tex. Fin. Code § 392.304(a)(8) which prohibits the defendant misrepresenting the character, extent, or amount of the plaintiff's debt, or misrepresenting the status of the plaintiff's debt in a judicial or governmental proceeding.  Since the defendant alleged the justification for pulling the reports was "account review" or "other business transaction" that was a misrepresentation of the status of debt.

c)   Tex. Fin. Code § 392.304(a)(19) which prohibits the defendant's use of false representations or deceptive means to collect a debt.  Since the debt had been discharged and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt in violation of the discharge injunction.

d)   Under Tex. Fin. Code Ann. § 392.403, the said violations render the Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

70.   The above Texas Finance Code provisions are not preempted by the Fair Credit Reporting Act. *See Maloney v. LVNV LLC*, Slip Copy, 2006 WL 3006484, N.D. Tex., October 20, 2006 (NO.CIV.A.3:06-CV-0452).

71.   Defendant has further violated the Texas Finance Code by suing to evict Mr. Haberman when Defendant knew or had reason to know that Mr. Haberman never actually

pulling of a credit report without a valid purpose, defendant's action was also a violation of the Texas Finance Code.

b)   Tex. Fin. Code § 392.304(a)(8) which prohibits the defendant misrepresenting the character, extent, or amount of the plaintiff's debt, or misrepresenting the status of the plaintiff's debt in a judicial or governmental proceeding.  Since the defendant alleged the justification for pulling the reports was "account review" or "other business transaction" that was a misrepresentation of the status of debt.

c)   Tex. Fin. Code § 392.304(a)(19) which prohibits the defendant's use of false representations or deceptive means to collect a debt.  Since the debt had been discharged and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt in violation of the discharge injunction.

d)   Under Tex. Fin. Code Ann. § 392.403, the said violations render the Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

70.   The above Texas Finance Code provisions are not preempted by the Fair Credit Reporting Act. *See Maloney v. LVNV LLC*, Slip Copy, 2006 WL 3006484, N.D. Tex., October 20, 2006 (NO.CIV.A.3:06-CV-0452).

71.   Defendant has further violated the Texas Finance Code by suing to evict Mr. Haberman when Defendant knew or had reason to know that Mr. Haberman never actually

occupied the subject property and, in fact, that the subject property had formally been "surrendered" and foreclosed upon in August 2009, almost *two (2) years* prior to the eviction action.

72. Defendant's conduct in connection with the forcible detainer action violates Tex. Fin. Code § 392.301(a)(8) and § 392.304(a)(8).

73. Under Tex. Fin. Code Ann. § 392.403, said violations render the Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.

## GROUNDS FOR RELIEF - COUNT III

### TEXAS COMMON LAW TORT OF UNREASONABLE COLLECTION

74. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

75. The above described conduct constitutes a pattern of harassment that is willful, wanton, malicious, and intended to inflict mental anguish.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Mr. Haberman, prays that the Court will:

A. Enter judgment in favor of Mr. Haberman and against PNC for statutory damages, actual damages, costs, and reasonable attorneys' fees as provided by Tex. Fin. Code Ann. § 392.403;

B. Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award punitive damage not less than three times the actual damages, including attorneys' fees, costs and expenses awarded in this case;

D.  Declare that Defendant's actions violated the Texas Finance Code;

E.  Enjoin the defendant from pulling Plaintiff's consumer reports in the future in violation of the Texas Finance Code and FCRA;

F.  Award Plaintiff his damages under the FCRA and for unreasonable collection.

G.  Award Plaintiff pre-judgment interest as allowed by law.

H.  Grant such other and further relief, in equity or in law, to which Mr. Haberman might show himself justly entitled.

        Respectfully submitted,

        /s/ *Sylvia A. Goldsmith*
        Sylvia A. Goldsmith
        LAW OFFICE OF SYLVIA A. GOLDSMITH
        Gemini Towers
        1991 Crocker Road, Suite 600
        Westlake, OH  44145
        Telephone:  (440) 934-3025
        Facsimile:  (440) 934-3026
        Email:  sgoldsmith@sgoldsmithlawoffice.com

        William L. Manchee
        SBOT 12891200
        James J. Manchee
        SBOT 00796988
        Manchee & Manchee, PC
        12221 Merit Drive, Suite 950
        Dallas, Texas 75251
        (972) 960-2240 (telephone)
        (972) 233-0713 (fax)

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and accurate copy of the foregoing is being filed electronically with the United States District Court for the Eastern District of Texas, on this 28th day of October 2011.  Notice of this filing will be transmitted to counsel of record by operation of the Court's electronic filing system.

                                                    /s/ *Sylvia A. Goldsmith*
                                               Sylvia A. Goldsmith, Esq.