UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **STEVEN W. HABERMAN** | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 4:11CV-00126 MHS-ALM |
| | ) |
| **PNC MORTGAGE COMPANY** FKA | ) Magistrate Judge Amos L. Mazzant |
| NATIONAL CITY MORTGAGE CO. | ) |
| A DIVISION OF PNC BANK FKA | ) |
| NATIONAL CITY BANK | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

Plaintiff Steven W. Haberman ("Mr. Haberman" or "Plaintiff"), through counsel, respectfully submits this Memorandum in Support of his *Motion For Attorneys' Fees And Reimbursement Of Litigation Expenses* (hereinafter, "Fee Petition").

**I.      INTRODUCTION.**

This Fee Petition follows nearly eighteen (18) months of litigation and a bench trial held on August 13-14, 2012 at which Plaintiff prevailed against Defendant PNC Mortgage Company ("PNC"). This Court returned a damage award in favor of Plaintiff, specifically finding both a negligent and willful violation of the Fair Credit Reporting Act ("FCRA") by PNC and determining that it was appropriate to award statutory damages on a per-violation basis.[1] In prevailing on these important and novel bases, Plaintiff has served the public interest by enforcing the FCRA to assure that privacy interests and other benefits for consumers and the

---

1 This case presents two significant firsts of which Plaintiff is aware in the FCRA context: (1) a subscriber has been found liable for a *willful* violation of the FCRA for pulling a consumer's credit report post-bankruptcy discharge; and (2) statutory damages have been awarded on a per-violation basis.

economy that are embodied in the FCRA are not impeded upon. In its determination, the Court also notes that Plaintiff is entitled to attorneys' fees and costs.

Pursuant to the express authorization of the FCRA, *see* 15 U.S.C. §§ 1681*n* and *o*, Plaintiff now seeks an award of attorneys' fees in the amount of $130,605.00 and reimbursement of costs in the amount of $15,210.02.[2] In support of these amounts, Plaintiff submits the Declaration of lead counsel, Sylvia A. Goldsmith, which is attached hereto as Appendix 1. Attorney Goldsmith's Declaration (hereinafter "Goldsmith Decl.") includes: (1) a complete curriculum vitae of Attorney Goldsmith; (2) detailed, contemporaneous-produced time records for each attorney who worked on this case; (3) the declarations of David Szwak and Jim Francis, two nationally-recognized FCRA litigators familiar with the skill and experience of Plaintiff's lead counsel; (4) the declaration of Bonner Walsh, a Dallas-based attorney who is familiar with the current market rate for Federal litigation services in the greater Dallas / Eastern District of Texas market; and (5) a detailed accounting of all unreimbursed costs advanced by Plaintiff's counsel.

Based on applicable authority as detailed herein as well as all supporting materials, Plaintiff respectfully asks this Court to award him the full amount of his attorneys' fees and costs.

## II. <u>OVERVIEW OF THE LITIGATION.</u>

This was an action for damages brought by an individual consumer against PNC for numerous violations of the FCRA and the Texas Debt Collection Act, Tex. Fin. Code §

---

2 Plaintiff is also entitled to an award of post-judgment interest should PNC fail to pay the underlying monetary award, as well as any fees and costs award, within 30 days of entry. *See* 28 U.S.C. § 1961. Per this statutory provision, this Court should issue an order providing that Plaintiff is entitled to post-judgment interest from PNC, that such interest is to be paid, not only on monies awarded in this Court's *Final Judgment*, but also on the reasonable attorneys' fees and costs awarded through this Fee Petition, and that such interest shall begin to accrue thirty (30) days from the date of entry of an order on this Fee Petition. Such interest rate shall be "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

392.001 *et. seq*. The gravamen of Mr. Haberman's claim was that Defendant repeatedly accessed his consumer report subsequent to his bankruptcy discharge, and in the face of actual knowledge that it had no permissible purpose to do so.

Recognizing the significant issues at stake, PNC litigated this case without any regard for economy of time and resources.[3] Despite Plaintiff's good faith efforts to resolve this matter early on, PNC never responded or made any serious settlement offer until August 2012, less than two weeks before the trial of this matter (long after Plaintiff and his counsel had invested substantial time and resources litigating the case in preparation for trial). While it was free to embrace such a litigation strategy, it must now bear the responsibility for its recalcitrant defense. PNC's approach calls to mind an observation made by the Fifth Circuit in a case brought under a related federal fee-shifting consumer statute (Truth-In-Lending Act) where significant time was expended by plaintiff's counsel as a result of defendant's stalwart defense:

> [A]lthough defendants are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.[4]

After fighting vigorously at every turn and ultimately losing, PNC must now bear the same cost as the defendant in *McGowan*. Plaintiff was successful at summary judgment and at trial, has prevailed on virtually every issue in this litigation, and should therefore be awarded 100% of the actual time and costs expended by his counsel in prosecuting this consumer case against PNC.

### III. ARGUMENT.

#### A. Congress Provided A Fee Award To Successful FCRA Plaintiffs To Encourage Private Attorneys To Pursue Such Cases.

In an FCRA matter, the plaintiff *shall recover* "the costs of the action together

---

[3] A detailed overview of the proceedings and exchanges of counsel for the parties during the course of this litigation is provided in Ms. Goldsmith's Declaration. *See* Goldsmith Decl. at ¶ 6.
[4] *McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).

with reasonable attorneys' fees" in "the case of any successful action to enforce liability."[5] The purpose of awarding attorneys' fees under the FCRA is to encourage enforcement of the statute by consumer-protection attorneys, acting as "private attorneys general."[6] In particular, the fee-shifting provisions of the FCRA permit consumers to obtain competent counsel to represent them in this specialized litigation and effectuate important consumer rights. The Seventh Circuit summed it up succinctly:

> Congress provided fee-shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.[7]

**B.     This Court Has Already Ruled That Plaintiff Is Entitled To An Award Of Attorneys' Fees And Costs.**

There can be no dispute that Plaintiff successfully prevailed in his case against PNC. On September 7, 2012, this Court issued its *Findings of Fact and Conclusions of Law* expressly stating that "Plaintiff is entitled to an award of attorneys fees," and that "all costs are to be paid by Defendant."[8] Thus, Plaintiff is entitled to recover his attorneys' fees and costs for all time reasonably expended on this case, as well as all expenses reasonably incurred.

**C.     Reasonable Fees Are Determined By The Lodestar/Multiplier Approach.**

The Fifth Circuit has adopted a lodestar/multiplier approach for assessing the amount of reasonable attorneys' fee.[9] This Court must calculate a *lodestar* fee, which is the product of the number of hours reasonably expended on the case and the hourly rate that is

---

5  15 U.S.C. §§ 1681n(a)(3) and o(a)(2).
6  *Bryant v. TRW, Inc*., 689 F.2d 72, 79 (6th Cir. 1982).
7  *Tolentino v. Friedman*, 46 F.3d 645, 652-53 (7th Cir. 1995).
8  Docket at No. 78.
9  *Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575 (5th Cir. 1980); *Rutherford v. Harris County,* 197 F.3d 173, 192 (5th Cir. 1999) (*citing Hensley*, 461 U.S. at 433).

4

reasonable for the participating lawyers.[10] The lodestar is strongly presumed to yield a reasonable fee.[11] The lodestar analysis is generally considered the appropriate method of determining attorneys' fees in federal consumer-protection statutory fee-shifting cases because the shifting of fees serves the public policy of encouraging private enforcement of the substantive rights created by Congress.[12]

Specifically, the Court must apply the factors articulated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), which applied the lodestar method and then adjusted this figure on the basis of twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases.[13]

While at one point the *Johnson* factors were considered by courts solely in the application of the second step in the fee determination, that is, whether or not a multiplier would be applied to the lodestar calculation, the Fifth Circuit has emphasized that the *Johnson* factors are relevant to and may often "govern the determination of reasonableness itself."[14] Four of the *Johnson* factors – the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation – are

---

10 *Hensley,* 461 U.S. at 433; *See also Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).
11 *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).
12 MANUAL FOR COMPLEX LITIGATION § 24.13 (3d. ed. 1995); *Sheffer v. Experian*, 290 F. Supp. 2d 538, 553 (E.D. Pa. 2003).
13 *Johnson,* 488 F.2d at 717-718. *See also City of Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986).
14 *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 536 (5th Cir. 1986); *Blum v. Stenson*, 465 U.S. 886, 899 (1984) (Supreme Court indicates that most of the *Johnson* factors will ordinarily be reflected in the lodestar itself).

5

presumably fully reflected in the lodestar amount.[15] Even though the *Johnson* factors must be addressed to ensure that the resulting fee is reasonable, not every factor need be considered.[16]

The district court is required to identify from the fee petition those hours that were "reasonably" expended on the litigation. When making that determination, the district court is obligated to scrutinize the billing records carefully and to exclude excessive, duplicative, or otherwise unnecessary entries.[17] Similarly, the district court must determine reasonable hourly rates for the billing attorneys or paralegals. A reasonable hourly rate is determined with reference to the prevailing market rate in the relevant legal community for similar work.[18] Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys of similar caliber practicing in that community.[19] In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services.[20] Factual determinations relating to the number of hours reasonably expended and the reasonable hourly rates are reviewed for clear error.[21]

In the final step, after determining the lodestar amount, the district court may adjust the lodestar up or down based on relevant *Johnson* factors not already included in the lodestar. In doing so, the district court must apply the remaining *Johnson* factors to determine if the lodestar should be adjusted.[22]

### D. Plaintiff's Lodestar Fee Calculation.

The lodestar fee for Plaintiff's counsel in the instant case is broken down as

---

15 *Alberti v. Klevenhagen,* 896 F.2d 927, 930 (5th Cir. 1990).
16 *Batchelder v. Kerr–McGee Corp.,* 246 F.Supp.2d 525, 531 (N.D. Miss. 2003).
17 *Id.*
18 *Leroy v. City of Houston,* 906 F.2d 1068, 1079 (5th Cir. 1990).
19 *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (*citing Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993).
20 *Davis v. Board of School Commissioners of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976).
21 *Migis*, 135 F.3d at 1047.
22 *Von Clark v. Butler,* 916 F.2d 255, 258 (5th Cir. 1990).

follows:

|  | Hours: | Rate: | Lodestar: | Reduced To: |
|---|---|---|---|---|
| Sylvia Goldsmith: | 318.0 | $350.00 | $111,465.00 | $104,692.50 |
| Bill Manchee: | 10.3 | $350.00 | $3,605.00 | $2,467.50 |
| Jim Manchee: | 50.9 | $300.00 | $15,270.00 | $11,580.00 |
| Geoff McCarrell: | 150.5 | $225.00 | $33,750.00 | $11,745.00 |
| Paralegal(s): | 1.2 | $100.00 | $120.00 | $120.00 |
| **TOTAL:** | 530.8 |  | $164,210.00 | **$130,605.00** |

*See* Goldsmith Decl. at Exhibit 2.[23]

### E. The Entirety Of The Time Submitted Was Reasonably Necessary To Achieve The Successful Outcome For Plaintiff.

#### 1. Plaintiff's Counsel Have Exercised Billing Judgment And Have Substantially Reduced The Number Of Hours For Which Fees Are Requested.

Fee applicants bear the burden of not only establishing the appropriate hours but also that they exercised billing judgment.[24] Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant.[25]

Prior to submission of this Fee Petition, Plaintiff's counsel undertook a meticulous second-level review of its contemporaneously-produced time records to separate such excessive, duplicative or otherwise unnecessary entries.[26] Plaintiff's counsel completely redacted some entries and reduced the fee sought on certain other entries by 50%. All in all, Plaintiff reduced its total fee request by a little more than 20%. Thus, Plaintiff has met its duty

---

23 In general, when a plaintiff is awarded reasonable attorneys' fees, the plaintiff is also entitled to an award of reasonable attorneys' fees in connection with the time spent to prepare the fee application. *Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 632 (E.D. Pa. 1998). Plaintiff has included in this submission counsel's time spent in preparing the instant Fee Petition at 20.5 hours (which was designated to Lead Counsel's Associate, Geoff McCarrell). *See* Goldsmith Decl., Exhibit 2. Plaintiff anticipates that PNC will oppose the Fee Petition, and that as a result Plaintiff will also need to file a reply brief, which he estimates to take approximately an additional 5 hours.
24 *Saizan v. Delta Concrete Prods. Co. Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).
25 *Id.* at 799.
26 *See* Goldsmith Decl., Exhibit 2 (such fee reductions and redacted entries are reflected in the highlighted portions of the record).

of exercising billing judgment and PNC cannot properly protest that Plaintiff's counsel was inefficient, redundant or wasteful in prosecuting this claim.

### 2. The Amount of Time Expended Was Reasonable in Light of How This Case Was Defended By PNC.

A significant consideration in evaluating the reasonableness of the time expended by plaintiff is the manner in which the defendant approached the case. This goes directly to factors (1) and (2) in the *Johnson* analysis, *i.e.*, *the time and labor required in the litigation*, and *the novelty and complexity of the case*. A court can take into consideration the complexity of the case, determined by "examining the difficulty counsel faced in establishing proof and in meeting the litigation strategy of defendants."[27]

In the case *sub judice*, PNC obfuscated Plaintiff's litigation efforts at every turn. For instance, Plaintiff was forced through a six-month discovery battle which culminated in a motion to compel hearing causing considerable time, effort and resources to be expended by Plaintiff's counsel. And notably, PNC never once offered a penny to try to settle this matter (even in the face of two separate demands by Plaintiff) until twelve months into litigation.

### F. Plaintiff's Attorneys' Hourly Rates Are Reasonable.

The four (4) attorneys who worked on various aspects of Plaintiff's case seek hourly rates of $350.00, $300.00, and $225.00 respectively. The hourly rates sought by Plaintiff's counsel are well within the range of what is reasonable for federal FCRA litigation in this district and division. The appropriate hourly rate is that rate which is charged by attorneys of similar skill and experience for comparable legal services in the community.[28] The requested rates are reasonable under a *Johnson* analysis:

- *The novelty and difficulty of the legal issues*. This case involved litigation of

---
27 *Becker*, 15 F. Supp. 2d 621 at 632.
28 *Blum,* 465 U.S. at 893-94.

claims under the FCRA. A run-of-the-mill attorney does not possess the requisite knowledge and skill to competently handle such litigation. Credit reporting cases generally involve specialized knowledge of certain computer information systems, and data processing methods. Further, extensive knowledge of how the credit reporting system functions and operates, as well as an understanding and recognition of how and why certain data appears on a credit report, was necessary to properly conduct the litigation in this case. It is true that only a handful of attorneys in the country have this specialized knowledge, including Attorney Goldsmith.[29]

- *The skill required to perform the legal service adequately.* Extensive discovery hurdles are commonplace in FCRA litigation. In a large majority of these cases, at least one motion to compel is required to be filed by plaintiffs during litigation efforts against large, corporate banks and credit bureaus with extensive resources (as was the case here). Therefore, a skilled and experienced litigator is required to achieve greater successes in these types of cases. As Supreme Court decisions have made clear, experienced and expert attorneys who exhibit a high degree of skill have the right to have those factors calculated into the hourly rates.[30]

- *Preclusion of other employment by the attorney as a result of taking the case.* Plaintiff's counsel, both of which maintain small law practices, devoted a substantial amount of their time to this case. The number of hours required to properly and diligently represent the interests of Plaintiff precluded other employment by counsel.[31]

- *The customary fee for similar work in the community.* In support of the Goldsmith Declaration and the hourly rates sought, Plaintiff's counsel has submitted the

---

29 *See* Goldsmith Decl., Exhibit 1. Attorneys Francis and Szwak are also on the short list of attorneys who handle FCRA litigation against large banking institutions and credit reporting agencies, and are familiar with the type of complex document review that goes into the discovery process in these cases (*See* Goldsmith Decl., Exhibit 3, 4). Often, if not exclusively, these attorneys are sought out and retained by Plaintiffs or other attorneys who are out-of-state. For this reason, the attorney's fees and higher costs associated with travel to these locations should be compensated for.
30 *Pennsylvania v. Delaware Valley Citizens' For Clean Air*, 478 U.S. 546, 567 (1986).
31 *See* Goldsmith Decl. at ¶ 2.

declarations of Jim Francis and Dave Szwak, experienced and nationally-recognized FCRA litigators in good standing who are intimately familiar with the complexity of such work, as well as with Attorney Goldsmith's experience, skills and qualifications.[32] In addition, Plaintiff's counsel has submitted the declaration of Bonner Walsh, a Dallas-based attorney in good standing who is familiar with current Dallas / Eastern District of Texas market billing rates for litigation services under federal fee-shifting statutes.[33] These declarations collectively support the hourly rates submitted by Plaintiff's counsel.

Plaintiff's counsels' rates of $350.00, $300.00, and $225.00 are certainly within the range of acceptable rates for attorneys with comparable federal litigation experience within the Dallas / Eastern District of Texas legal market.[34] In addition, Attorney Goldsmith's hourly rate of $350.00 is at or below the average hourly rate typically charged by attorneys of her level of experience who handle complex FCRA litigation.[35]

- *Fixed or contingent fee.* As demonstrated above, Plaintiff's counsel charge rates that may be considered *lower* than the typical hourly rate for private, comparably experienced attorneys, who have litigated FCRA and similar fee-shifting cases in the greater Dallas / Eastern District of Texas market. That is unusual because, as Judge Posner of the Seventh Circuit Court of Appeals has observed:

> A contingent fee must be *higher* than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.[36]

---

32 *See* Goldsmith Decl., Exhibits 3, 4.
33 *See* Goldsmith Decl., Exhibit 5.
34 *Id.*
35 *See* Goldsmith Decl., Exhibit 3, 4.
36 Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added).

In this case, counsel prosecuted the case on a contingency basis and advanced all costs and expenses incurred in connection with the case. A risk of no recovery and significant uncertainty existed. These risks are properly considered in awarding attorneys' fees. The legal profession accepts contingent fees that exceed the market value of the services if rendered on a non-contingent basis as a legitimate way of assuring competent representation for plaintiffs who cannot afford to pay on an hourly basis regardless of whether they win or lose.[37] District courts in this Circuit have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.[38]

- *The experience, reputation and ability of the attorneys.* Plaintiff's Lead Counsel is a nationally-known FCRA litigator.[39] She has litigated in this area for nearly seventeen (17) years and has been called upon by the Federal Trade Commission (the governing body of the FCRA) and the Social Security Administration to offer testimony specific to her litigation experience under the FCRA. Ms. Goldsmith's extensive FCRA experience enables her to litigate a case such as this more efficiently than other attorneys with less familiarity with the intricacies unique to the credit reporting arena.

- *The undesirability of the case.* Consumer-protection litigation is not generally a desirable area of practice due to the complicated legal and factual issues, and the recalcitrant opponents who are financially able to win cases by attrition. In addition, counsel undertook this case on a contingency basis and expended a great deal of time and effort to successfully prosecute this case. These factors add to the overall undesirability of the case.

---

37 *In re Washington Public Power Supply System Secs. Litig.,* 19 F.3d 1291, 1299 (9th Cir. 1994).
38 *See e.g.*, *King v. United SA Federal Credit Union*, 744 F. Supp. 2d 607 (W.D. Tex. 2010); *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 330 (W.D. Tex. 2010) (court increased overall lodestar calculation based on the fact that Plaintiff's counsel took case on contingent fee basis); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 678 (N.D. Tex. 2010) (court awarded percentage increase to lodestar calculation because case was taken on contingency).
39 *See* Goldsmith Decl. at Exhibits 3, 4.

- *Awards in similar cases.* The hourly rates sought by Plaintiff's counsel here are consistent with rates deemed reasonable for FCRA attorneys by other courts considering similar cases.[40]

**G. Proportionality Is Not Appropriate In Assessing A Fee Petition In A Consumer-Protection Case Such As This.**

With respect *Johnson* factor number eight (8), *the monetary amount involved and the results obtained*, the fee award need not be proportionate to the result obtained.[41] Especially in consumer actions such as this, the recovery in terms of attorneys' fees and costs can be, and often is, considerably higher than the underlying money damages recovered. Therefore, courts have routinely looked beyond the monetary amount of damages awarded to plaintiffs in assessing the results obtained and the overall "success" of the prevailing party.[42]

For instance, the First Circuit recently decided that a district court did not abuse its discretion when it awarded $98,745.80 in attorneys' fees where the statutory damages award was $40,000.00[43] The court applied the lodestar method and did not reduce the calculation based on the amount of damages awarded. Even though the amount in attorney's fees was much larger relative to the awarded statutory damages, the Court held there is no requirement that there be "strict proportionality between fee and damages."[44] The Court explained that a strict

---

40 *See King v. United SA Federal Credit Union*, 744 F. Supp. 2d 607 (W.D. Tex. 2010) (court approves hourly rates of $400.00 and $350.00 for attorneys in FCRA permissible purpose case). *See also Naill v. Lincoln Mortgage, LLC*, 2010 WL 2292133, W.D. Va., June 7, 2010 (No. 3:09CV00039) (court approval of hourly rate of $375.00 for FCRA attorney).
41 *Prater v. Commerce Equities Management Co., Inc.*, 2008 WL 5140045, 157 Lab.Cas. P 35,520 (S.D.Tex. Dec 8, 2008) (No. 07-2349) (*citing Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997); *See City of Riverside*, 477 U.S. at 564-65 (no proportionality necessary between damages and fee award in fee-shifting case; finding that $245,456.25 fee award was appropriate in case where total damages were $33,350); *see also Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results. . .the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit").
42 *See, e.g.*, *Popham v. City of Kennesaw,* 820 F.2d 1570, 1580 (11th Cir. 1987) ("The affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees ...") (*citing City of Riverside*, 477 U.S. at 574.)
43 *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011).
44 *Id.* at 69.

proportionality requirement would "frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good."[45] FCRA cases, especially in the context of invasion of privacy such as in the instant case, are a prime example of the type of situation in which obtaining non-monetary relief or establishing a principle may be worth considerably more than the damages recovered.

Monetary damage awards in FCRA cases are rarely extensive.[46] In a case where Plaintiff conceded that he had relatively small economic damages, the $1,700.00 damage award comes as little shock to Plaintiff. Despite receiving this modest monetary damage award, Plaintiff nonetheless views the ruling in this case as an excellent result. Mr. Haberman recognizes that the true success in his case is one of *precedent*: this Court's ruling is the first of which Plaintiff is aware to find impermissible, post-bankruptcy account reviews to rise to the level of willful violations of the FCRA, and the first to award a plaintiff statutory damages for each violation that occurred. Plaintiff is well-aware of what these ramifications may offer similarly-situated consumers in the future, and takes pleasure in knowing that his small personal victory against PNC may in fact be a big win for the public as a whole. Mr. Haberman hopes that his case will aid in deterring PNC from similar conduct moving forward, and even go toward encouraging important policy and procedure changes within PNC. PNC's vehement defense in this matter was expended, not only in an effort to prevent Plaintiff himself from recovering a large damage award against it, but more importantly, to deter future recoveries by consumers in this newly developing area of the law. The findings in this case pave the way for future consumers in this regard.

---

45 *Id.*
46 *See City of Riverside*, 477 U.S. at 574 (court states, "Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act").

Therefore, despite the modest amount recovered by Plaintiff in this matter, the actual time and effort invested by his attorneys in achieving the hard-fought victory here should not be diminished.

## IV. CONCLUSION.

For all of the reasons set forth above, *Plaintiff's Motion For Attorney's Fees And Reimbursement Of Litigation Expenses* should be granted in its entirety. Plaintiff should be awarded attorneys' fees in the amount of $130,605.00, and costs in the amount of $15,210.02.

Dated: October 12, 2012.  Respectfully submitted,

  /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Ohio # 0064871)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Milano Law Building
2639 Wooster Road
Rocky River, Ohio 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
Email: **sgoldsmith@sgoldsmithlawoffice.com**

James J. Manchee
MANCHEE & MANCHEE, L.L.P.
12221 Merit Drive, Suite 950
Dallas, Texas 75251
Telephone: (972) 960-2240
Facsimile: (972) 233-0713
Email: **jim@mancheelawfirm.com**

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Plaintiff's Memorandum In Support Of Plaintiff's Motion For Attorneys' Fees And Reimbursement Of Litigation Expenses* is being filed electronically with the United States District Court for the Eastern District of Texas, on this 12th day of October 2012. Notice of this filing will be transmitted to counsel of record by operation of the Court's electronic filing system.

    /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Ohio # 0064871)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Attorney for Plaintiff