UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN W. HABERMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 4:11CV-00126 MHS-ALM |
| | ) | |
| PNC MORTGAGE COMPANY FKA | ) | Magistrate Judge Amos L. Mazzant |
| NATIONAL CITY MORTGAGE CO. | ) | |
| A DIVISION OF PNC BANK FKA | ) | |
| NATIONAL CITY BANK | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

In reply to *PNC Mortgage's Response in Opposition to Motion for Attorneys' Fees and Reimbursement of Litigation Expenses*, Plaintiff, Steven W. Haberman, states as follows:

**I. Defendant Grossly Misstates The Claims Pursued By Plaintiff In Hopes Of Limiting The Fees And Expenses Necessarily Incurred Achieving Plaintiff's Successful Outcome.**

Defendant's opposition to *Plaintiff's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses* is rooted in the false notion that Plaintiff seeks an award of attorneys' fees and litigation expenses related to a multitude of baseless claims for which he never recovered. While Defendant represents that Plaintiff pursued claims for unlawful debt

1

collection, defamation,[1] violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and invasion of privacy,[2] this case is and has always been an FCRA case stemming from Defendant's repeated illegal access of Plaintiff's credit report information.

In May 2011, shortly after the original petition in this case was filed and before any meaningful litigation occurred, Plaintiff's lead counsel, Sylvia A. Goldsmith, a nationally-known FCRA attorney, made an appearance here, and Plaintiff's Second Amended Complaint was filed.[3] The Second Amended Complaint states only two (2) claims: (1) Count I – Fair Credit Reporting Act, alleging Defendant negligently and/or willfully violated the FCRA each and every time they impermissible pulled Plaintiff's credit report post-bankruptcy; *see generally* Second Amended Complaint at ¶¶ 40-48; and (2) Count II – Texas Finance Code ("TFC"), alleging that by violating the FCRA (by illegally accessing Plaintiff's credit report), Defendant also violated the TFC. *See*, *e.g.*, Second Amended Complaint at ¶ 55(a).[4]

Over the next fifteen (15) months, this litigation focused on developing Plaintiff's allegations that Defendant negligently and/or willfully violated the FCRA through the repeated pulling of Plaintiff's credit report, even after being specifically directed by counsel and then through this litigation, that such conduct was illegal. *All* expenditures made by Plaintiff's counsel, both in time and money, were directed at proof of these claims. For instance, Plaintiff

---

[1] Defendant spends a significant portion of its opposition brief discussing alleged time and effort Plaintiff spent advancing a defamation claim when no such claim was ever brought by Plaintiff. All of Defendant's arguments on point can be summarily disregarded.

[2] Defendant also confuses the notion that an invasion of privacy claim is somehow different than an FCRA claim. As is made clear in the "Congressional findings and statement of purpose" section of the FCRA, see 15 U.S.C. § 1681 (a)(4), and as was explained at trial by Plaintiff's nationally-renowned privacy/FCRA expert, Evan Hendricks, the FCRA is federal codification of state invasion of privacy law.

[3] Less than five (5) total hours of attorney and paralegal time prior to Ms. Goldsmith's involvement in this case are included in Plaintiff's Fee Petition. So even if there was some argument that "other" claims were originally brought by Plaintiff and later abandoned, such argument would be moot to any extent beyond the limited hours spent thereon.

[4] Plaintiff's Third Amended Complaint which was filed in October 2011 after Plaintiff learned of the forcible detainer actions that had previously been filed by Defendant with Judgment being entered against Plaintiff without him even being served with same, included a common law claim for unreasonable collection. Interestingly, Defendant refused to acknowledge this filing until now.

took only three (3) depositions in this case, and each one was aimed at establishing Defendant's repeated and illegal accesses to Plaintiff's credit report. The first deposition that was conducted was of non-party, Trans Union, LLC, the entity from whom Defendant accessed Plaintiff's credit report information. This deposition obviously was limited to Plaintiff's credit report information and Defendant's requests for same, which go directly to proof of Plaintiff's FCRA claims.

The only other depositions taken by Plaintiff, the depositions of Charles Englehart and Dorothy ("Dot") Thomas, were done pursuant to Plaintiff's Notice of Rule 30(b)(6) Deposition. Pursuant to that rule, Plaintiff is limited to questioning the designated deponents about the Subjects of Examination identified in the Notice, and an examination of Plaintiff's Notice shows that he identified Subjects that related solely to Defendant's requests and use of credit report information from Trans Union, *i.e.*, information aimed specifically at his FCRA claims. *See* Notice of Rule 30(b)(6) Deposition Directed to PNC (a copy of which is attached hereto as Exhibit 1).[5]

Notably, Defendant's opposition says nothing about the fact that Defendant obfuscated Plaintiff's afore-described discovery efforts at every turn. Plaintiff was only able to get the very evidence he needed to prove his successful FCRA claim after being forced to brief and argue (in person) a Motion to Compel. This Court should consider all of Plaintiff's

---

[5] Subjects 1 and 2 seek account information which is necessary to establish whether Plaintiff had any other accounts with Defendant which might have created a permissible purpose to pull his credit report information. Subjects 4, 5 and 6 seek information about how accounts included in a bankruptcy petition or discharge are to be handled which directly impacts whether such accounts would be flagged so as to prevent account reviews being done. Subjects 7 – 10, 16 – 19, 22, and 25 – 27, seek information about why account reviews are done, what information, both generically and specifically, is obtained from Trans Union when an account review is obtained, and what was done specifically with respect to Plaintiff's information. Subjects 11 – 15, 20, 21 and 24 seek information about permissible purpose (which is at the core of Plaintiff's FCRA claim). Subjects 28 and 29 seek information about Defendant's privacy policies and procedures since the FCRA is codification of state invasion of privacy law and so, Defendant's representations as to the importance of privacy go to establish its willfulness in violating Plaintiff's privacy here. Subject 30 seeks any interpretations of the FCRA which Defendant intends to rely upon as a defense per *Safeco Ins. Co. v. Burr*, 55 U.S. 47, 127 S.Ct. 2201 (2007).

counsel's necessary efforts in this regard when determining the reasonableness of the fees and expenses requested. *See Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 632 (E.D. Pa. 1998).

Plaintiff has provided this Court with extensive contemporaneous time records that detail the specific time and effort spent by Plaintiff's counsel litigating Plaintiff's claims and which resulted in a judgment for Plaintiff on eight (8) separate negligent and willful violations of the FCRA, a successful outcome that has never before been achieved by any consumer. Defendant cannot (and does not) point to a single entry in these time records that is somehow unrelated to Plaintiff's advancement of his groundbreaking FCRA victory. As such, Defendant has failed to show how any of the time, effort or resources requested in Plaintiff's fee petition is unreasonable and should not be awarded in total.

## II. Comparing Eleventh-Hour Settlement Offers to the Ultimate Judgment Obtained Provides Little Direction Here.

As explained in greater detail in Plaintiff's opening *Memorandum in Support* of his fee petition, Plaintiff made good faith efforts to settle this case at every stage of this litigation. *See, e.g., Memorandum In Support Of Plaintiff's Motion For Attorneys' Fees And Reimbursement Of Litigation Expenses* at 2. In fact, Plaintiff's local counsel, James Manchee, attempted to resolve the matter before litigation was ever commenced. Defendant simply ignored Plaintiff's efforts until *twelve (12) full months* into the litigation. Yet now, Defendant wants to talk about what was offered by Defendant just two (2) weeks before trial, after the majority of time, effort and expense had been invested by Plaintiff, as a gauge for what was a reasonable amount for Plaintiff to expect out of the case. It is improper to consider that sort of Monday-morning quarterbacking at this point. *See Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992) ("[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted").

**III.   The Results Obtained Here Are Exceptional as a Case of First Impression.**

With little else to stand on, Defendant is left with what can only be described as a proportionality argument, *e.g.*, that any award of fees and costs should be limited to a multiple of the economic recovery obtained. However, "the monetary amount involved and the results obtained" is but one factor to be considered when evaluating whether the requested fees are reasonable. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In fact, courts specifically acknowledge that the fee award need not be proportionate to the result obtained. *See*, *e.g.*, *Prater v. Commerce Equities Management Co., Inc.*, 2008 WL 5140045, 157 Lab.Cas. P 35,520 (S.D.Tex. Dec 8, 2008) (No. 07-2349) (*citing Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997).

Defendant seems to recognize as much noting that "the degree of success obtained" is the critical factor. *See* Defendant's Opposition at 7. As discussed in detail above, this case is and always has been an FCRA case, and Plaintiff achieved 100% success on his FCRA claims, winning a judgment against Defendant on eight (8) separate negligent and willful violations of the FCRA. While the dollar amount awarded may not have been as significant as Plaintiff had hoped, no other consumer in the country has succeeded in getting a judge or jury to find both a negligent and willful violation of a post-bankruptcy account review on a per pull basis. That makes the degree of success obtained here exceptional.

**IV.   Conclusion.**

For all of the reasons set forth above and in Plaintiff's opening *Memorandum in Support*, *Plaintiff's Motion for Attorney's Fees and Reimbursement of Litigation Expenses* should be granted in its entirety.

Dated:  November 6, 2012	Respectfully submitted,


	 /s/ Sylvia A. Goldsmith
	Sylvia A. Goldsmith (Ohio # 0064871)
	LAW OFFICE OF SYLVIA A. GOLDSMITH
	Milano Law Building
	2639 Wooster Road
	Rocky River, Ohio  44116
	Telephone:  (440) 934-3025
	Facsimile:  (440) 934-3026
	Email: sgoldsmith@sgoldsmithlawoffice.com

	James J. Manchee
	MANCHEE & MANCHEE, L.L.P.
	12221 Merit Drive, Suite 950
	Dallas, Texas 75251
	Telephone: (972) 960-2240
	Facsimile: (972) 233-0713
	Email: jim@mancheelawfirm.com

	Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Reply Memorandum In Support Of Plaintiff's Motion For Attorneys' Fees And Reimbursement Of Litigation Expenses* is being filed electronically with the United States District Court for the Eastern District of Texas, on this 6th day of November 2012. Notice of this filing will be transmitted to counsel of record by operation of the Court's electronic filing system.

    /s/ Sylvia A. Goldsmith
Sylvia A. Goldsmith (Ohio # 0064871)
LAW OFFICE OF SYLVIA A. GOLDSMITH
Attorney for Plaintiff